1

2

3

4                                                     *E-FILED - 6/29/10*

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10               FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES WILSON CALLOWAY,              )         No. C 07-2335 RMW (PR)
11                                        )
               Plaintiff,                 )         ORDER GRANTING
12      v.                                )         DEFENDANT'S MOTION
                                          )         FOR SUMMARY JUDGMENT
13                                        )
CALIFORNIA DEPARTMENT OF                  )
14  CORRECTIONS AND                       )         (Docket No. 93)
REHABILITATION, et al.,                   )
15                                        )
               Defendants.                )
16  _____)

17      Plaintiff, a state prisoner proceeding pro se, filed an amended civil rights complaint

18  pursuant to 42 U.S.C. § 1983 against Defendant Cesar L. Sinnaco ("Sinnaco"), alleging that

19  Sinnaco was deliberately indifferent to planitiff's serious medical needs.  Sinnaco filed a motion

20  for summary judgment addressing the merits of the amended complaint.  Plaintiff filed a reply.

21  After a review of the record, the court concludes that plaintiff has not shown evidence

22  that precludes summary judgment.  Accordingly, the court GRANTS defendant's motion for

23  summary judgment.

24                            **STATEMENT OF FACTS[1]**

25      In September 2003, plaintiff was taking Prilosec, an anti-ulcer medication, because he

26  had symptoms of gastro-esophageal reflux disease.  (Decl. Chudy at ¶ 4.)  On September 9,

27

28
        _____
        [1] Unless otherwise noted, all facts presented below are undisputed.

Order Granting Defendant's Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.07\Calloway335msj.wpd

1   2004, plaintiff filled out a Health Care Services Form complaining of stomach pain and bloody

2   diarrhea. (Id. at ¶ 5; Ex. A at 35.) On July 11, 2005, plaintiff saw Sinnaco, asked him for a refill

3   of Prilosec, and complained of urinary symptoms. (Decl. Chudy at ¶¶ 6, 7.) Plaintiff also

4   requested a colon and prostate exam. (Am. Comp. at 9.) In response, Sinnaco performed a

5   digital rectal examination and determined that plaintiff had an enlarged prostate. (Decl. Chudy

6   at ¶ 8.) After discovering that plaintiff had a large prostate, Sinnaco prescribed Hytrin, a

7   medication for "benign prostate hyperplasia," and renewed plaintiff's Prilosec prescription. (Id.

8   at ¶ 9.)

9        On August 6, 2005, plaintiff began to complain about stomach pains and excessive bowel

10  movements. (Id. at ¶ 10.) On September 1, 2005, plaintiff was seen by Dr. Ahmed who treated

11  him by discontinuing the Hytrin at plaintiff's request and prescribing metronidazole and Mylanta

12  to address plaintiff's complaints of loose bowels. (Id. at ¶ 11.) On September 15, 2005, plaintiff

13  was taken to the infirmary with complaints of pain in his right groin and stomach and an inability

14  to stand or walk. (Id. at ¶ 12.) He was discharged three days later with a diagnosis of arthritis

15  and viral gastroenteritis. (Id.) On September 22, 2005, after plaintiff was still complaining of

16  loose stools and cramps, Dr. Friederichs ordered a Barium enema and x-ray. On October 13,

17  2005, the enema revealed results consistent with ulcerative colitis. (Id. at ¶¶ 13, 14.) On

18  October 20, 2005, Dr. Friederichs noted that plaintiff was experiencing no more pain and

19  plaintiff's "bowel movements" returned to normal. (Id. at ¶ 15.) Still, Dr. Friederichs requested

20  a colonoscopy for plaintiff, which was approved a few days later. (Id. at ¶¶ 15, 16.)

21       On December 5, 2004, plaintiff again complained of diarrhea, and Dr. Ahmed suspected

22  ulcerative colitis but was waiting for a colonoscopy to confirm. (Id. at ¶ 17.) In the meantime,

23  Dr. Ahmed prescribed a Prednisone taper. (Id.) On December 19, 2005, plaintiff complained of

24  vomiting, stomach pain, and diarrhea and Dr. Dayalan arranged for a colonoscopy as soon as

25  possible. (Id. at ¶ 18.) Plaintiff was able to receive a colonoscopy on December 27, 2005 at

26  Natividad Medical Center in Salinas. (Id.) The colonoscopy confirmed ulcerative colitis and

27  plaintiff was given prednisone and imuran (an immunosuppressant). (Id. at ¶ 19.)

28

1

**DISCUSSION**

2 A.      Standard of Review

3       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

4 that there is "no genuine issue as to any material fact and that the moving party is entitled to

5 judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect

6 the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

7 as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

8 verdict for the nonmoving party. Id.

9       The party moving for summary judgment bears the initial burden of identifying those

10 portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

11 issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving

12 party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

13 reasonable trier of fact could find other than for the moving party. But on an issue for which the

14 opposing party will have the burden of proof at trial, as is the case here, the moving party need

15 only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

16 at 325.

17       Once the moving party meets its initial burden, the nonmoving party must go beyond the

18 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

19 genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

20 material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

21 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to

22 scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279

23 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable

24 particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to

25 make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp

26 v. Catrett, 477 U.S. at 323.

27 B.      Plaintiff's Claim

28       Plaintiff alleges that Sinnaco should have requested a colonoscopy exam for plaintiff on

Order Granting Defendant's Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.07\Calloway335msj.wpd      3

1  July 11, 2005.  Plaintiff argues that Sinnaco should have known that the prison was not equipped

2  with the proper equipment for a colonoscopy exam and that a digital rectal exam was not

3  sufficient to diagnose his colitis.  (Am. Comp. at 9.)  Plaintiff further alleges that Sinnaco's

4  method of a digital rectal exam exacerbated the colitis and resulted in substantial delay of

5  treatment.  (Id.)

6      Deliberate indifference to serious medical needs violates the Eighth Amendment's

7  proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104

8  (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

9  WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A

10  determination of "deliberate indifference" involves an examination of two elements: the

11  seriousness of the prisoner's medical need and the nature of the defendant's response to that

12  need.  See McGuckin, 974 F.2d at 1059.

13      A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

14  risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

15  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

16  facts from which the inference could be drawn that a substantial risk of serious harm exists," but

17  he "must also draw the inference."  Id.  If a prison official should have been aware of the risk,

18  but was not, then the official has not violated the Eighth Amendment, no matter how severe the

19  risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

20      A claim of medical malpractice or negligence is insufficient to make out a violation of

21  the Eighth Amendment.  See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004); Hallett

22  v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

23  1981).  Negligence "in diagnosing or treating a medical condition, without more, does not

24  violate a prisoner's Eighth Amendment rights."  McGuckin, 974 F.2d at 1059.  In order to state a

25  cognizable claim, the prisoner must allege acts or omissions that are sufficiently harmful to

26  demonstrate deliberate indifference.  Id.

27      Deliberate indifference "may be manifested in two ways.  It may appear when prison

28  officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the

1   way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d

2   390, 392 (9th Cir. 1988).  In order for deliberate indifference to be established, there must first

3   be a purposeful act or failure to act on the part of the defendant and resulting harm.  See

4   McGuckin, 974 F.2d at 1060.  "A defendant must purposefully ignore or fail to respond to a

5   prisoner's pain or possible medical need in order for deliberate indifference to be established."

6   Id.  Second, there must be a resulting harm from the defendant's activities.  Id.

7           Here, plaintiff has tendered no competent evidence demonstrating that the course of

8   diagnosis and treatment Sinnaco chose was medically unacceptable under the circumstances, see

9   Toguchi, 391 F.3d at 1058, that Sinnaco's actions caused any delay in plaintiff's receiving a

10  colonoscopy, or that any delay in plaintiff's receiving a colonoscopy ultimately caused him

11  harm.  Plaintiff asserts that his "drastic weight lost [sic] and medical problems were compound

12  [sic] by the delay in treatment and diagnosis."  However, plaintiff has provided no evidence that

13  his medical issues or weight loss were linked in any way attributable to Sinnaco's actions or

14  inactions.  In fact, Sinnaco only tended to plaintiff on July 11, 2005; thereafter, plaintiff was seen

15  multiple times by Drs. Ahmed and Friederichs.

16          Moreover, as a matter of law, that Sinnaco examined plaintiff via a digital rectal exam

17  when plaintiff requested a prostate and colon exam at most represents a difference of medical

18  opinion between Sinnaco and plaintiff as to the proper course of medical care.  This does not

19  give rise to a § 1983 claim.  See Estelle, 429 U.S. at 107 ("A medical decision not to order an

20  X-ray, or like measures, does not constitute cruel and unusual punishment."); Toguchi, 391 F.3d

21  at 1058; Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own

22  opinion as to the appropriate course of care does not create a triable issue of fact because he has

23  not shown that he has any medical training or expertise upon which to base such an opinion.").

24  In this regard, plaintiff's disagreement with Sinnaco as to the appropriate course of diagnosis and

25  treatment, without more, is insufficient to survive defendant's motion for summary judgment.

26          Plaintiff also contends that Sinnaco's failure to timely refer him for an outside

27  colonoscopy exam led to the failure to timely treat his colitis.  Plaintiff has produced no evidence

28  demonstrating that Sinnaco caused or could have prevented the delays.  See McGuckin, 974 F.2d

1    at 1062 (affirming grant of summary judgment in favor of two physicians because the record

2    failed to demonstrate that either was responsible for scheduling diagnostic examinations or

3    hindered the performance of such examinations in that case).  Most importantly for resolution of

4    the pending motion for summary judgment, plaintiff has tendered no evidence suggesting that

5    any delays in his medical treatment ultimately caused him harm.  See McGuckin, 974 F.2d at

6    1059.  Instead, plaintiff merely argues that he experienced pain and bleeding during the delay in

7    treatment.  However, as noted above, Sinnaco adequately addressed plaintiff's complaints when

8    he saw plaintiff on July 11, 2005, and other doctors continuously provided him with a variety of

9    treatments and ultimately referred him for a colonoscopy, which he received in December 2005.

10   As of August 15, 2006, plaintiff's colitis was well managed and he was due for another follow-

11   up appointment in March 2007.  (December 13, 2006 Director's Level of Review.)

12        Finally, plaintiff has provided no competent evidence demonstrating that Sinnaco chose

13   his course of diagnosis and treatment in conscious disregard of an excessive risk to plaintiff's

14   health.  In fact, Dr. Chudy, Chief Medical Officer at the Correctional Training Facility in

15   Soledad, submitted a declaration signed under penalty of perjury that in his opinion, Sinnaco

16   appropriately treated plaintiff and there is no known cause of ulcerative colitis.  (Decl. Chudy at

17   ¶ 22.)  In addition, in one of plaintiff's administrative grievances, Dr. Friederichs interviewed

18   plaintiff and informed him that a digital rectal examination was the appropriate screening

19   procedure for an individual over 50 with gastrointestinal symptoms.  (December 13, 2006,

20   Director's Level Appeal Decision.)  In contrast, plaintiff does not demonstrate that Sinnaco's

21   course of diagnosis and treatment was medically unacceptable under the circumstances.  See

22   Toguchi, 391 F.3d at 1058

23        Thus, the court finds that plaintiff's submissions insufficient to preclude summary

24   judgment.  See Keenan, 91 F.3d at 1279.  Viewing the facts in the light most favorable to

25   plaintiff, the evidence does not demonstrate that Sinnaco was deliberately indifferent to

26   plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment right.

27   Accordingly, the court GRANTS defendant's motion for summary judgment.

28

Order Granting Defendant's Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.07\Calloway335msj.wpd        6

1

**CONCLUSION**

2      Defendant's motion for summary judgment is GRANTED.  Plaintiff's Eighth

3 Amendment claim is DISMISSED with prejudice.  The Clerk shall terminate all pending

4 motions.

5      IT IS SO ORDERED.

6 DATED: ___6/29/10_____

*Ronald M. Whyte*

7                                                          RONALD M. WHYTE
                                                          United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28